UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL KAREEM KHAN,<br><br>  Plaintiff,<br><br>  v.<br><br>TWITTER, INC.,<br><br>  Defendant. | Case No. 23-cv-00816-SI<br><br>**ORDER DISMISSING AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 22 |

On February 6, 2023, self-represented plaintiff Abdul Kareem Khan filed a complaint against Twitter, Inc with a motion for leave to proceed in forma pauperis. Dkt. No. 1. On July 2, 2023, Magistrate Judge Beeler issued a Screening Order pursuant to 28 U.S.C. § 1915(e)(2)(B) dismissing the case with leave to amend. Dkt. No. 17. Plaintiff did not amend by the deadline, and because not all parties had agreed to have the case heard by a magistrate judge, Judge Beeler issued an order reassigning the case along with a report and recommendation that the complaint be dismissed with prejudice. Dkt. No. 18. Plaintiff objected to the report and recommendation, and the Court gave him another opportunity to amend his complaint to fix the deficiencies identified in the Screening Order. Dkt. No. 21. On September 20, 2023, plaintiff filed an amended complaint against Twitter, Inc. Dkt. No. 22. The complaint asserts numerous claims, many of which were not asserted in the original complaint. The asserted claims include intentional infliction of emotional distress[1]; breach of contract[2]; violation of 15 U.S.C. § 6801; violation of section 2 of the Sherman

---

[1] The amended complaint includes two counts that do not allege causes of action but rather damages: "irreparable injury of reduced health span and lifespan due to sleep deprivation" and "irreparable injury of time and energy lost." The Court considers these counts under the IIED tort claim.

[2] The amended complaint asserts three separate counts of breach of contract.

Antitrust Act; violations of California Business and Professions Code § 17200; and violation of 15 U.S.C. § 45 and 15 U.S.C. § 52.[3] The complaint also asserts a count of "liable for reparation" under 15 U.S.C. § 15. Plaintiff seeks $15 million from Twitter for personal and economic injuries.

## BACKGROUND

All factual allegations are taken from plaintiff's amended complaint. Dkt. No. 22 ("Amended Compl."). Plaintiff is "involved in business activities" and subscribed to be a user of Twitter's online networking platform on February 8, 2013. *Id.* ¶ 4. Plaintiff has shared some of his activities on Twitter's networking platform. *Id.* ¶ 12.

In April or May 2020, plaintiff came across a tweet or retweet from the Twitter handle of Emma Watson. *Id.* ¶ 6. Plaintiff had been seeking funds for some projects and sent proposals to Watson through her Los Angeles based talent agent. *Id.* ¶¶ 7-8. "While plaintiff was still expecting to build a rapport with the artist," around August 2020 and onwards, he began receiving "annoying" Twitter email notifications on a daily basis about tweets by an anonymous Twitter handle "Emma Watson Updates" that tweeted or retweeted content related to Watson. *Id.* ¶ 9. Plaintiff either deleted these emails or left them in his email inbox, sometimes without opening them and sometimes after reading them. *Id.* Plaintiff has replied to tweets or retweets by Watson on her official Twitter handle but has never interacted with the "Emma Watson Updates" Twitter handle. *Id.* ¶ 10. Plaintiff asked Watson's agent to look into the issue of these email notifications and the agent assured plaintiff in an email that he would, but nothing changed. *Id.* ¶ 11.

On August 29, 2021, plaintiff changed his email ID provided to Twitter for subscribing to its online platform. *Id.* ¶ 14. He also checked his Twitter account settings to see if there was an option to filter out unwanted email notifications. *Id.* ¶ 15. Plaintiff was not able to find a way to limit email notifications to only desired notifications. *Id.* On February 5, 2022, plaintiff emailed a notice to the former CEO of Twitter asking him to look into the sending of the unwanted notifications and to take the necessary steps to filter out the "Emma Watson Updates" notifications

---

[3] Plaintiff labels these as Lanham Act violations, but the Court notes that the Lanham Act is at 15 U.S.C. §§ 1051 et seq and pertains to trademark registration and protection.

1  from other notifications Twitter was emailing him. *Id.* ¶ 17. Twitter didn't respond. *Id.* ¶ 18. On
2  August 27, 2022, plaintiff sent a second notice via registered air mail; the envelope was returned to
3  plaintiff. *Id.* ¶ 19. On September 5, 2022, plaintiff sent a copy of the notice to Twitter's former
4  Board Chairman via email and a hard copy to Twitter. *Id.* On November 10, 2022, after Elon Musk
5  acquired Twitter, plaintiff sent copies of the two notices to Musk through his attorney and to
6  Twitter's major shareholders via email or postal service. *Id.* ¶ 21. He did not receive a response.
7  *Id.*

8  Plaintiff alleges that after receiving the first notice, Twitter engaged in retaliatory action
9  because instead of taking corrective measures, Twitter engaged in "intentional infliction of
10 emotional damages by deliberately and aggressively spamming his inbox not only with more [Emma
11 Watson Updates] notifications but also with a cluster of email notifications about rubbish tweets by
12 a number of different Twitter handles." *Id.* ¶ 22. After plaintiff emailed Twitter the first notice, the
13 titles of some of the notifications that plaintiff received in March and April of 2022 had the names
14 of geographical locations. *Id.* ¶ 24.

15 Plaintiff alleges that the "Emma Watson Updates" email notifications caused him
16 "emotional distress, sleep deprivation, cardiac arrhythmia, and other health issues." *Id.* ¶ 13.
17 Additionally, "[l]ack of concentration on professional activities due to emotional distress and sleep
18 deprivation made him out of work and his personal funds and savings fully exhausted." *Id.* Plaintiff
19 alleges that Twitter's inaction regarding the notifications hindered his ability to earn a living. *Id.*
20 ¶ 8. He further alleges that the "aggressive harassment" by Twitter adversely affected his Circadian
21 rhythm which in turn affected his creativity and productivity. *Id.* ¶ 26. For example, in March 2022,
22 plaintiff resumed video production of a song but "lost control over the project expenditure due to
23 the lack of concentration owing to emotional distress and sleep deprivation." *Id.* He further alleges
24 that due to sleep deprivation caused by Twitter and "related frustrations," he tripped on some steps
25 and fell on May 1, 2023, causing distal radial fracture in his right hand. *Id.* ¶ 30.

3

**LEGAL STANDARD**

The statute that authorizes courts to allow lawsuits to proceed without prepayment of the filing fees also requires the Court to dismiss the case if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). For purposes of 28 U.S.C. § 1915, a frivolous claim is one that "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4] The complaint need not contain "detailed factual allegations," but the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions"; a mere "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* at 555 (internal quotations omitted). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**DISCUSSION**

**I.  Intentional Infliction of Emotional Distress (IIED)**

Plaintiff alleges that Twitter engaged in IIED by spamming his inbox with the Watson notifications and a cluster of other email notifications about tweets by a number of different Twitter handles. Amended Compl. ¶ 22. Plaintiff further alleges that Twitter "deliberately neglected" to act upon the notices plaintiff sent and engaged in retaliatory action of IIED. *Id.* ¶¶ 35-36.

Under California law, the elements of an IIED claim are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

---

[4] "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watson v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

4

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotations omitted).  A defendant's conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). Additionally, the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.*

The Court accepts as true that plaintiff has suffered emotional distress from the unwanted receipt of Twitter email notifications.  However, plaintiff cannot meet the first element of an IIED claim on these facts.  While the inability to filter out unwanted email notifications is frustrating, it does not rise to the level of extreme and outrageous conduct.  Furthermore, there is no indication that Twitter intended to cause plaintiff severe emotional distress through the email notifications or realized that the email notifications, which plaintiff presumably opted into when he registered as a Twitter user, would cause severe emotional distress.  Plaintiff subscribed to be a user of Twitter's online networking platform on February 8, 2013.  Amended Compl. ¶ 4.  In his February 2022 email notice to Twitter, plaintiff indicated that he is an active Twitter user.  Dkt. No. 1 at 6.  In the letter plaintiff sent to Twitter in August 2022, plaintiff seems to admit that he could have unsubscribed to the "highlights notifications" but chose not to.  *Id.* at 8.  Plaintiff has also inadequately pled the third element, causation.  He admits that he deleted some of the email notifications and sometimes did not read them and does not explain how the email notifications caused him to suffer the extreme emotional distress he alleges.  Amended Compl. ¶ 9.[5]

## II.   Breach of Contract

Judge Beeler's Screening Order indicated that plaintiff could perhaps plead a breach of contract claim if he identified Twitter's obligation to do something about the conduct under its terms of service.  Dkt. No. 17 at 4.  In response, plaintiff alleges that Twitter failed to perform its

---

[5] Plaintiff also alleges that due to the "arrogance, refusal, and failure on the part of Defendant Twitter, even under Mr. Elon Musk as its acquirer, to protect Plaintiff's emotional and physical well-being" he is entitled to punitive damages. Amended Compl. ¶ 40. Because the Court concludes that plaintiff cannot state an IIED claim on these facts, it does not reach the issue of punitive damages.

5

obligations under the 2018 Twitter User Agreement.  Amended Compl. ¶¶ 41, 44, 47.  The Twitter User Agreement includes its Terms of Service, Privacy Policy, Twitter Rules, and associated policies.[6]  Plaintiff specifically alleges that Twitter misused his email address, failed to prevent spam, engaged in abusive behavior, and did not provide plaintiff an option to filter out and choose what email notifications he wanted to receive.  *Id.* at ¶¶ 44, 47, 48.

Under California law, the elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, (2011).  "And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach."  *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992).

Although plaintiff has now pointed the Court to the existence of a contract, plaintiff has failed to allege a breach of the 2018 User Agreement ("Agreement") by Twitter.  The provisions of the Agreement that plaintiff includes as exhibits to his amended complaint refer to what Twitter users (such as plaintiff) can and cannot do: users "may not use Twitter's services for the purpose of spamming anyone," Twitter prohibits "behavior that crosses the line into abuse…," users "may not engage in the targeted harassment of someone…").  *See* Dkt. No. 22-11, 22-12.  Plaintiff includes at Exhibit N one sentence under the "Spam and security" section of the Agreement; the full text likewise lists actions Twitter users may not do or attempt to do.  *See id.* at 22-12.  The full Agreement indicates: "You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate… [w]e may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content."  The Agreement further indicates that users may deactivate their account at any time.  The Court has reviewed the full Agreement and cannot locate any provision that Twitter may have breached on the alleged facts.

---

[6] Plaintiff references a 2018 Twitter User Agreement and includes screenshots of select portions of that Agreement in his amended complaint.  The Court has located a complete copy of the 2018 User Agreement, available at https://cdn.cms-twdigitalassets.com/content/dam/legal-twitter/site-assets/privacy-policy-new/Privacy-Policy-Terms-of-Service_EN.pdf.

### III. 15 U.S.C. § 6801

15 U.S.C. § 6801 – protection of nonpublic personal information – applies to financial institutions and requires financial institutions to establish certain safeguards with respect to the privacy of their customers. Because Twitter is not a financial institution as described in 15 U.S.C. § 6805, 15 U.S.C. § 6801 is inapplicable to the facts plaintiff alleges.

### IV. Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2)

Plaintiff alleges that because some of the email notifications he received in March and April of 2022 had the names of geographical locations, Twitter must have tracked plaintiff's IP address or laptop activities, conduct plaintiff alleges is in violation of the Sherman Antitrust Act. Amended Compl. ¶ 24.

As an initial matter, the Court notes that the 2018 Twitter User Agreement expressly indicates in its Privacy Policy that "when you use Twitter… we receive some personal information from you like the type of device you're using and your IP address." The Agreement further indicates that Twitter "requires information about your signup and current location."

Section 2 of the Sherman Act prohibits the monopolization of trade or commerce among the states or with foreign nations. 15 U.S.C. § 2. This provision is inapplicable to the facts plaintiff alleges. Section 1 of the Sherman Act is likewise inapplicable because that section prohibits agreements that restrain trade or reduce competition in the market. 15 U.S.C. § 1.

Plaintiff separately alleges that Twitter is liable for reparation under 15 U.S.C. § 15 due to the sunk costs of plaintiff's song. Amended Compl. ¶ 46. This section of the U.S. Code is also part of the Sherman Act and applies to persons injured in their business or property by anything forbidden under the antitrust laws of the United States. This provision is likewise inapplicable to the facts plaintiff alleges.

### V. California Business and Professions Code § 17200

Plaintiff alleges that Twitter committed a deceptive and unfair business practicing by misusing his email address and committed unfair, deceptive, untrue, or misleading advertising by

7

failing to respond to the notices plaintiff sent. *Id.* ¶¶ 43, 45.

California Business and Professions Code § 17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." The scope of this provision is broad, and the California Legislature intended this language to include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). However, an action under this provision "is not an all-purpose substitute for a tort or contract action" and the remedies provided are limited. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 173 (2000). "It is well established that individuals may not recover damages." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal 4th 1134, 1150 (2003) (citation omitted).

Plaintiff is seeking compensation for personal and economic injury, which are individual damages. Because the relief plaintiff seeks is not available under this provision, the Court does not reach the issue of whether the alleged facts make out a plausible claim.

**VI.   15 U.S.C. § 45 and 15 U.S.C. § 52**

Plaintiff alleges that Twitter "misled and breached its public assurance" in violation of 15 U.S.C. § 45 (a)(4)(A)(ii) (unfair methods of competition) and 15 U.S.C. § 52 (a)(b) (dissemination of false advertisements) by failing to act upon the notices plaintiff sent to Twitter regarding the unwanted email notifications. Amended Compl. ¶ 45.

15 U.S.C. § 45 prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Plaintiff does not allege that the receipt of unwanted email notifications affects commerce. Thus, this provision of the U.S. Code is inapplicable to the alleged facts.

15 U.S.C. § 52 prohibits the dissemination of false advertisements by United States mail and the dissemination of false advertisements having an effect on commerce for the purpose of inducing

8

or likely to induce the purchase of food, drugs, devices, services, or cosmetics. 15 U.S.C. §52(a). The dissemination of a false advertisement within the provisions of subsection (a) "shall be an unfair or deceptive act or practice in or affecting commerce within the meaning of section 45 of this title." *Id.* at § 52(b). Plaintiff does not allege that he received any false advertisements through United States mail, much less advertisements for the purpose of inducing or likely to induce the purchase of food, drugs, devices, services, or cosmetics. Thus, this provision of the U.S. Code is inapplicable to plaintiff's alleged facts.

## CONCLUSION

For the reasons stated in this order, pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that the complaint fails to state a claim, and that the deficiencies cannot be cured by amendment. Accordingly, the Court DISMISSES the complaint without leave to amend.

**IT IS SO ORDERED**.

Dated: October 3, 2023

_____
SUSAN ILLSTON
United States District Judge